**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION**

**WILLIAM DAVIS,**

**Plaintiff,**

**v.** **Case No. 4:24-cv-477-AW-MAF**

**CVS PHARMACY, INC.,**

**Defendant.**

________________________________/

**ORDER OF DISMISSAL**

After CVS Pharmacy sent him unwanted text messages, Plaintiff William Davis filed this putative class action under the Telephone Consumer Protection Act (TCPA). ECF No. 1; *see also* 47 U.S.C. § 227(c)(5) (authorizing private right of action). As the parties agree, the statute at issue limits the private cause of action to persons who "received more than one telephone call" and who suffered "a violation of the regulations prescribed under" the statute. 47 U.S.C. § 227(c)(5). Davis alleges CVS violated a regulation that precludes calls to those registered on the Do Not Call Registry. ECF No. 1 ¶ 45 (citing 47 C.F.R. § 64.1200(c)(2)).

At issue now is CVS's motion to dismiss, which presents two issues: Are text messages "telephone calls" for purposes of the statute? And is a cell phone subscriber a "residential telephone subscriber"? As the parties agree, if the answer to either question is "no," Davis cannot succeed.

Having carefully considered the parties' arguments, I conclude the answer to the first question is "no"; a text message is not a "telephone call." That makes it unnecessary to address the separate (and more difficult) question of whether a cell phone subscriber is a "residential telephone subscriber." Either way, CVS is entitled to the dismissal it seeks.

**I.**

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, the court accepts all well-pleaded facts as true. *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1384 (11th Cir. 2024). Here, the plausibility of Davis's claim turns on the two legal questions set out above. And because a text message is not a "telephone call," Davis has not stated a plausible claim.

**II.**

Courts must interpret every statute "in accord with the ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 654 (2020). "The canons of construction often play a prominent role in that endeavor, serving as useful tools to discern that ordinary meaning." *Heyman*

*v. Cooper*, 31 F.4th 1315, 1319 (11th Cir. 2022) (cleaned up). But if the text is clear, the analysis begins and ends there. *Young v. Grand Canyon Univ., Inc.*, 980 F.3d 814, 818 (11th Cir. 2020). The statutory text here *is* clear, and a text message is not a "telephone call." As CVS cogently explains,

> No normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner.

MTD at 9. Certainly, no ordinary person would think of a text message as a "*telephone* call." This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case.

Davis resists this conclusion for several reasons. First, he argues that Supreme Court and Eleventh Circuit opinions concluded that text messages *are* calls under the TCPA. Specifically, he points to *Campbell-Ewald Company v. Gomez*, a Supreme Court case that—in his view—"recognized that a text message to a cellular phone can qualify as a 'call' within the meaning of the TCPA." Resp. at 18 (quoting 577 U.S. 153, 156 (2016)). But as CVS points out, the Court assumed, but did not decide, that issue. *See* MTD at 11 n.4; Reply at 7-8. Moreover, that case did not address the statutory term "telephone call" at issue here; it dealt with a broader prohibition on "any call." *See Campbell-Ewald*, 577 U.S. at 156 ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of

§ 227(b)(1)(A)(iii).”); *see also* 47 U.S.C. § 227(b)(1)(A)(iii) (making it unlawful for certain persons “to make any call” to certain lines under certain circumstances). Later, in *Facebook, Inc. v. Duguid*, the Court cited *Campbell-Ewald*, noting that “[n]either party disputes that the TCPA’s prohibition also extends to sending unsolicited text messages” but reiterating that the Court “assume[d] that it does without considering or resolving that issue.” 592 U.S. 395, 400 n.2 (2021)). In short, neither *Campbell-Ewald* nor *Facebook* includes any binding interpretation of the statutory term “telephone call” at issue here.

The Eleventh Circuit cases Davis cites are similarly unhelpful. In *Drazen v. Pinto*, for example, the Court did not interpret the statute at all; it addressed whether an unwanted text message constituted a sufficient injury to confer Article III standing. *See* 74 F.4th 1336, 1345 (11th Cir. 2023). Davis suggests the jurisdictional issue would be irrelevant if the statute did not cover texts, but courts must address jurisdictional issues before considering the merits. *See Mirage Resorts, Inc. v. Quiet Nacelle Corp.*, 206 F.3d 1398, 1400-01 (11th Cir. 2000). The issue in *Salcedo v. Hanna*, which both sides cite, was likewise whether receiving an unwanted text could constitute an Article III injury. *See* 936 F.3d 1162, 1167 (11th Cir. 2019). That case did not address the merits, other than to observe that the statute at issue there was “silent as to text messaging.” *Id.* at 1166. Moreover, the statute underlying both *Drazen* and *Salcedo* was the one at issue in *Campbell-Ewald*—not the statute at issue

here. *See Drazen*, 74 F.4th at 1340 (citing 47 U.S.C. § 227(b)(1)(A)(iii); *Salcedo*, 936 F.3d at 1165 (same). That statute does not include the term "telephone call." In sum, none of these cases holds—or even suggests—that a text message is a "telephone call" for purposes of § 227(c)(5).

Next, Davis points to provisions beyond § 227(c)(5), which creates the private right of action he pursues. He notes that another provision protects consumers' right "to avoid receiving telephone solicitations to which they object," and that yet another provision defines "telephone solicitation" to include "a telephone call or message." Resp. at 14 (quoting § 227(c)(1) and § 227(a)(4)). But however Congress defines "telephone solicitation"—and whatever Congress directed the FCC to do in terms of regulating certain "telephone call[s] or message[s]"—the private right of action Congress created exists only for those who received multiple "telephone calls." 47 U.S.C. § 227(c)(5).

In fact, Congress's use of the phrase "telephone call or message" in a neighboring provision only undermines Davis's position. It shows that Congress does not use the term "telephone call" to encompass all "messages." Although Davis would have me conclude Congress used the term "telephone call" in § 227(c)(5) and the term "telephone call *or message*" in § 227(a)(4) to have identical meanings, courts should "presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different

meanings." *Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1344 (11th Cir. 2025); *accord Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 859 (11th Cir. 2000) ("[W]hen Congress uses different language in similar sections, it intends different meanings.").

Davis argued at the hearing that Congress surely would not regulate text messages and telephone calls while limiting its private right of action to only telephone calls. But Congress can (and does) provide private rights of action narrower than its full breadth of regulation. The very provision at issue (§ 227(c)(5)) proves the point. It limits the private right to those who received two or more unwanted calls, even when a single call would violate the TCPA. Moreover, I reject Davis's suggestion that it would make no sense for Congress to limit the private right to telephone calls while regulating more broadly. Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter. Whatever its reasoning, it clearly limited the private right to those receiving "telephone calls."

Davis next argues that interpreting "telephone call" to exclude text messages would "produce a result which is actually inconsistent with the policies underlying the statute." Resp. at 16 (quoting *Bailey v. USX Corp.*, 850 F.2d 1506, 1509 (11th Cir. 1988)). There are two significant problems with this argument. First, it is not

obvious that limiting the private right of action to address a subset of prohibited conduct would contradict the statute's purpose. Regulating callers could serve the purpose of protecting consumers even if Congress created no private right of action al all. *Cf. Alexander v. Sandoval*, 532 U.S. 275, 286-87 ("The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. . . . . Without it, a cause of action does not exist and courts may not create one, no matter . . . how compatible with the statute.") (internal citations omitted). But second—and more importantly—the court's role is not to look beyond clear language to ascertain Congress's purpose. Instead, the best evidence of that purpose is the language of the statute itself.[1] *See*

[1] As noted above, Davis quoted *Bailey v. USX Corp.*, which held that "[w]hile it is true that the language of a statute should be interpreted according to its ordinary, contemporary and common meaning, this plain-meaning rule should not be applied to produce a result which is actually inconsistent with the policies underlying the statute." 850 F.2d 1506, 1509 (11th Cir. 1988) (citation omitted). To the extent this decision held that concepts of congressional purpose could overcome plain statutory language, it has been abrogated by subsequent Supreme Court and en banc Eleventh Circuit decisions. *See, e.g.*, *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 970 (11th Cir. 2016) (en banc) ("Elevating general notions of purpose over the plain meaning of the text is inconsistent with our judicial duty to interpret the law as written."); *Kucana v. Holder*, 558 U.S. 233, 252 (2010) ("[T]he textual limitations upon a law's scope are no less a part of its 'purpose' than its substantive authorizations." (quoting *Rapanos v. United States*, 547 U.S. 715, 752 (2006))); *United States v. Pate*, 84 F.4th 1196, 1206 (11th Cir. 2023) (en banc) ("Purposes, obvious or otherwise, provide no basis for skirting a statute's plain language. And as the Supreme Court has reminded us, to the extent a statute's purpose is relevant, 'the best evidence of that purpose is the statutory text adopted by both Houses of

*United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc) ("Where the language Congress chose to express its intent is clear and unambiguous, that is as far as we go to ascertain its intent because we must presume that Congress said what it meant and meant what it said."); *United States v. Fisher*, 289 F.3d 1329, 1338 (11th Cir. 2002) ("The plain language is presumed to express congressional intent and will control a court's interpretation."); *see also Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("When the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (cleaned up)).[2]

Last, Davis points to the FCC's 2003 order concluding texts should be considered calls for certain TCPA purposes. Davis misquotes *McLaughin Chiropractic* to say the FCC conclusion is entitled to "appropriate deference." Resp. at 16 (misquoting *McLaughin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025)). *McLaughlin* actually calls for "appropriate respect," not "appropriate deference." *See* 606 U.S. at 168. And the concepts are different. One can provide "appropriate respect" to an agency's view without adopting a statutory interpretation that conflicts with the ordinary public meaning of clear statutory text.

---

Congress and submitted to the President.'" (quoting *West Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991))).

[2] Davis has not explicitly argued that interpreting "telephone call" to exclude text messages would be absurd. I would have rejected such an argument.

Thus, even assuming the FCC order clearly defined "telephone calls" as that term is used in § 227(c)(5), "appropriate respect" for that conclusion would not require a different outcome here.[3]

* * *

To succeed on his § 227(c)(5), Davis had to allege that he received at least two "telephone calls." He alleged receiving only text messages. And because text messages are not telephone calls, he has not stated a claim. I thus need not address CVS's separate contention that a cellular subscriber is not a "residential subscriber."

The motion to dismiss (ECF No. 22) is GRANTED. The clerk will enter judgment stating, "Plaintiff's claims are dismissed on the merits for failure to state a claim." The clerk will then close the file.

SO ORDERED on August 26, 2025.

s/ *Allen Winsor*
Chief United States District Judge

[3] Under the Administrative Orders Review Act (or Hobbs Act), 28 U.S.C. § 2342(1), the courts of appeals have "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communication Commission." But the Hobbs Act does not deprive district courts of authority to interpret the TCPA contrary to FCC orders when deciding an actual case or controversy. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 168 (2025). So even if the FCC order were contrary to this court's conclusion, that would not preclude dismissal.